Robert L. Greener, Esq.
LAW OFFICE OF ROBERT L. GREENER
112 Madison Avenue, 6th Floor,
New York, NY 10118
(646)415-8920 Phone
(212) 689-9680
rlg@greenerlegal.com
Attorney for Plaintiff LION'S CATHEDRAL PRODUCTION LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

19 CV 5454

———————————————————————X

LION'S CATHEDRAL PRODUCTION LLC,

                    Plaintiff                    Civil Action No.

          v.                                     COMPLAINT FOR TRADEMARK
                                                 INFRINGEMENT
MICAH LEMON and TOM MCGOVERN, individually,
and UNIVERSITY OF VIRGINIA PRESS, and DOES 1-10
                    Defendants.

———————————————————————X

        Plaintiff, LION'S CATHEDRAL PRODUCTION LLC, by its undersigned attorney

ROBERT L. GREENER, for its Complaint against MICAH LEMON and TOM MCGOVERN,

individually, and the UNIVERSITY OF VIRGINIA PRESS Defendants, alleges as follows:


## NATURE OF THE ACTION

1.    This is a suit by Plaintiff,  LION'S CATHEDRAL PRODUCTION LLC (hereinafter

"LCPLLC") against Defendants MICAH LEMON (hereinafter "LeMon") and TOM MCGOVERN

(hereinafter "McGovern") individually, and UNIVERSITY OF VIRGINIA PRESS (hereinafter

"UVP") for preliminary and permanent injunctions, statutory  damages, treble damages or

profits, compensatory damages, punitive damages,  pre-judgment  interest, attorneys' fees,

1

investigators' fees and costs from defendants for Plaintiff's mark that Defendants have willfully and maliciously counterfeited. Defendants are being sued by LCPLLC as a result of Defendants' sale, offers for sale, distribution, promotion and advertisement of books as being infringements of the LCPLLC's federally registered 'Imbible' Trademark.  As set forth below, the unlawful acts of Defendants constitute federal trademark infringement and counterfeiting, false designation of origin and false description and unfair competition under New York law. The acts of the Defendants have, are, and will continue to infringe, tarnish, and dilute the LCPLLC's famous trademark.

2.    The Imbible series of Off-Broadway plays were created by Anthony Caporale, an award-winning pioneer in the beverage world, internationally known for being the first to bring mixology to both YouTube, with his seminal web video series Art of the Drink TV, and then to the stage in the Imbible series.

3.    Mr. Caporale prior to becoming the producer of the Imbible theater productions was a well-known restaurateur and mixologist working with everyone from Bobby Flay to Bloomingdales department store. He personally designed and oversaw the Five-Million-dollar build-out of the bar and lounge for the John W. Engemen theater in New York, and as a result became the director of operations.

4.    Mr. Caporale has given two Talks at Google as a cocktail and spirits expert, and he has appeared as a Master Mixologist on numerous national television and radio shows including 'The Dr. Oz Show,' 'FOX Money,' and 'Martha Stewart Living Radio.' Working with IBM's

2

Watson supercomputer, he created the cocktail recipes for the groundbreaking cookbook, 'Cognitive Cooking with Chef Watson.'

5.     Two of the plays are staged in a prestigious 'off-Broadway' theater located right in the theater district in midtown Manhattan. The other plays have been variously staged in Off-Broadway and Off-Off-Broadway theaters.

6.     The first play is titled "The Imbible: A Spirited History of Drinking" and the second is "The Imbible: Day Drinking", followed by "The Imbible: Christmas Carol Cocktails", and "The Imbible: Rum and Pirates." Since 2014, the shows have combined music and comedy with history and science, sweeping audiences along a 10,000-year journey through history and across the globe while learning about and enjoying cocktails and spirits. All performances include three complimentary craft cocktails.

7.     The Imbible is about to enter its sixth year and surpass 1,000 performances as one of the 100 longest-running Off-Broadway shows of all time and has been a smash-hit among both audiences and critics. All four plays have received substantial press and very favorable reviews of the production from such publications as the New York Times, Time Out New York and Business Insider. The shows have also received a certificate of excellence from Trip Advisor for three years in a row and earned 4 stars in Yelp.

8.     The Imbible shows continue to not only remain relevant but popular among the consumers of Off-Broadway plays in the United States and internationally. Below is a listing of news and information sites with stories about the Imbible shows with links that range from 2014 until date.

9.     These sites show that the Imbible shows continue to have name recognition in the marketplace and that consumers still look for and follow news and information about Imbible. In fact, many of the Off-Broadway play reviewers and tourist guide websites have placed the Imbible shows among the topmost must-see shows in New York City. Thus, the name Imbible has secondary meaning in the world of theater goers and consumers of cocktails:

https://www.nytimes.com/2014/08/12/theater/a-review-roundup-of-fringe-festival-shows.html

http://gothamist.com/2015/07/15/8_ways_to_get_your_drink_on_this_ju.php

https://www.broadwayworld.com/article/A-St-Patricks-Day-Must-THE-IMBIBLE-A-Spirited-History-of-Drinking-20170216

https://www.insidermonkey.com/blog/20-best-things-to-do-in-nyc-in-april-574513/5/

https://www.geeksofdoom.com/2017/03/06/theater-review-imbible-history-drinking

https://www.broadwayworld.com/off-broadway/article/THE-IMBIBLE-Announces-New-Brunch-Edition-DAY-DRINKING-20170511

https://dcmetrotheaterarts.com/2017/04/25/review-imbible-spirited-history-drinking-new-world-stages/

https://www.villagevoice.com/2017/06/20/get-your-brunch-on-at-the-pleasant-and-informative-the-imbible-day-drinking/

https://www.broadwayworld.com/article/Sip-on-Cocktails-Past-Present-Future-with-THE-IMBIBLEs-Holiday-Show-20171116

https://www.metro.us/things-to-do/new-york/brunch-musical-imbible-day-drinking-peak-nyc

https://dcmetrotheaterarts.com/2018/09/08/review-the-imbible-rum-and-pirates-at-the-producers-club-theaters/

https://www.cityguideny.com/article/things-to-do-in-nyc-this-weekend-may-24-27#.XO6XlvZFx9A

https://www.timeout.com/newyork/theater/a-spirited-history-of-drinking-the-musical-comedy

http://www.playbill.com/discount/playbill-discounts-for-the-imbible-a-spirited-history-of-drinking

10.   Due to the popularity and success of the Imbible plays, Anthony Caporale  through the incorporated LCPLLC filed for and received a trademark, registration number 4,859,696, on November, 24 2015 for its mark "IMBIBLE" in international class 41, covering entertainment in the nature of theater productions from the United States Patent and Trademark Office.  See Exhibit "A".

11.   LCPLLC spends thousands of dollars a year on marketing and promotion of The Imbible shows in print media around the country and around the world such as trade magazines and tourist magazines, and on-line which reach people in the United States and internationally.

12.   Tourists from all over the country and internationally attend the productions, and as a result the shows have national and international recognition.

13.   Since Imbible is an immediately recognized name which regularly appears in the media and has had thousands of local and international attendees, it has become a target for infringers.

14.   LCPLLC asserts claims against Defendants for trademark infringement and counterfeiting under Section 32(1) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1114(1); unfair competition and false designation of origin under Section 43(a)(1)(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); false advertising under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); and for substantial and related claims under New York State and common law, including deceptive trade practices.

15.   Plaintiff seeks injunctive relief to prevent the sale, shipment, and further dissemination of Defendants' infringing books and to prevent the use of LCPLLC's Trademark (or any marks confusingly similar thereto); an accounting and disgorgement of Defendants' profits received from their unlawful use of LCPLLC's Trademark; statutory damages of up to $2,000,000 per counterfeit mark per books sold or distributed by Defendants, as authorized by Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c); recovery of LCPLLC's attorneys' fees; any other relief authorized by the Lanham Act and applicable state law; and such other relief as the Court deems just and proper.

**PARTIES**

5.      LCPLLC is organized under the laws of the State of North Carolina and registered as a foreign corporation in the State of New York with its main business address being 320 East 65th Street #626, New York, NY 10065.

6.      LCPLLC has produced several well-known Off-Broadway musicals under the Imbible name since 2014. The trademark used by LCPLLC to identify its productions is the IMBIBLE mark ("IMBIBLE").

7.      Upon information and belief, University of Virginia Press is a corporation organized and existing under the laws of the State of Virginia, having a place of business 210 Sprigg Lane, Charlottesville, VA 22903.

8.      Upon further information and belief, University of Virginia Press is the publisher of "The

Imbible: A Cocktail Guide for Beginning and Home Bartenders" and/or directed, authorized and/or personally participated in the unlawful activity described herein.

9.     Upon information and belief, Defendant Micah LeMon, is an individual residing in Charlottesville, VA.

10.     Upon further information and belief, Mr. LeMon is the author of "The Imbible: A Cocktail Guide for Beginning and Home Bartenders" and/or directed, authorized and/or personally participated in the unlawful activity described herein.

11.     Upon information and belief, Defendant Tom McGovern, is an individual residing in Charlottesville, VA.

12.     Upon further information and belief, Mr. McGovern is the photographer of all the images in "The Imbible: A Cocktail Guide for Beginning and Home Bartenders" and/or directed, authorized and/or personally participated in the unlawful activity described herein.

13.     Upon information and belief, at all relevant times with respect to the offenses alleged in this Complaint, LeMon, McGovern and UVP (collectively, the "UVP Defendants") were acting in concert, with the knowledge and consent of each other, such that each and every Defendant is liable and responsible for the acts of the other Defendants.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of

the Lanham Act, 15 U.S.C. § 1121, and under Sections 1331, 1338(a) and 1338(b) of the Judicial

Code, 28 U.S.C. §§ 1331, 1338(a) and 1338(b), and under principles of pendent jurisdiction. The

Court has supplemental jurisdiction over LPCLLC's state law claims under Section 1367(a) of the

Judicial Code, 28 U.S.C. § 1367(a).

15.     Further, the Court has diversity jurisdiction over Defendants under 28 U.S.C. §1332 as

there exists diversity of citizenship among the parties and hereto and the amount of controversy,

exclusive of interests and cost, exceeds the sum of $75,000. This Court also has personal

jurisdiction over Defendants under New York Civil Practice Law and Rules Section 301 because,

upon information and belief, Defendants transact business in New York.

16.     Venue is proper in this district pursuant 28 U.S.C. §1391becasue a substantial part of the

actions and wrongful conduct underlying these claims occurred in this district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

A.     LCPLLC's Business and Trademark

17.     The Imbible mark is famous and has developed secondary meaning and significance in the

Theatrical and cocktail industry and in the minds of the purchasing public. The mark is immediately

identified by the purchasing public exclusively with LCPLLC.

18.     LCPLLC filed for and received a trademark, registration number 4,859,696, on November, 24 2015 for its mark "IMBIBLE" in international class 41, covering entertainment in the nature of theater productions from the United States Patent and Trademark Office.  See Exhibit "A". LCPLLC's Registration is valid, subsisting, and in full force and effect, pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065. As such, the registration serves as conclusive evidence of LCPLLC's ownership of the mark and of exclusive right to use the mark in commerce on or in connection with the goods identified in the registration. See 15 U.S.C. § 1115(b).

19.     LCPLLC has been using the mark IMBIBLE in connection with its theater productions since 2014.

20.     The Imbible Mark is vital to Plaintiff, and Plaintiff will suffer irreparable harm if any third parties, including Defendants, are permitted to advertise, offer for sale, sell and distribute books not authorized by Plaintiff but that nonetheless utilize and/or bear the IMBIBLE Mark.

B.     Defendant's infringing conduct.

21.     On October 10, 2017, Defendants published "The Imbible: a cocktail guide for beginning and home bartenders", authored by LeMon, photographed by McGovern and published by UVP the following ISBN numbers: ISBN-10: 0813940389, ISBN-13: 978-0813940380. The main title of the book "The Imbible" is the same exact title of the series of Off-Broadway plays produced by LCPLLC.  See Image 1 below.

9



Image 1.

22.      The title page of the book clearly uses Plaintiff's mark without a subtitle. The first chapter of

Defendants' book includes an in-depth analysis of "Historical Approaches to Making Balanced

Cocktails" on Page 8, tracing the history of mellowing spirits back to the seventeenth century. This is

confusingly similar to an important element of Plaintiff's plays particularly the first play, titled "The

Imbible: A Spirited History of Drinking" which sweeps audiences through a 10,000-year journey

through history and across the globe about cocktails and spirits.

23.      Defendants, currently use "The Imbible" name in commerce to offer the Infringing Books

10

for sale through various outlets in interstate commerce including sites like Amazon.com. See Image 1 above.

24.      The first 10 results of a Google search for the words "The Imbible Book" show two hits for the Amazon listing for Defendants' book with the other eight results being links to tickets and reviews for Plaintiff's shows. This shows that Defendants' book is diluting the distinctiveness of Plaintiff's Imbible Trademark and creates a likelihood of confusion by ultimate purchasers as to both the source and origin of the books as being authorized by Plaintiff.

25.      Defendants, without authorization or license from Plaintiff, have knowingly and willfully used, reproduced and/or copied the Imbible Mark in connection with distributing, exporting, importing, selling and offering to sell the Infringing Products in interstate commerce, including through the Internet.

26.      Defendants have knowingly manufactured, advertised, offered for sale, sold and distributed the Infringing Products in interstate commerce, including through the Internet, intrastate and foreign commerce, including commerce in the State of New York and in this judicial district.

27.      Defendants use of mark dilutes and infringe upon the Imbible Trademark on or in connection with the manufacturing, advertising, offering for sale, sale, distribution of the Infringing Books is likely to dilute the distinctive quality of the Imbible Trademark and/or cause confusion, or to cause mistake or to deceive.

28.     Upon information and belief, Defendants are selling the Infringing Books on their website, which can be accessed in this District and throughout the United States. Upon information and belief, the Infringing Books are being used by Defendants to draw customers to its own products and away from Plaintiff's series of books which it intends to create in the near future.

## COUNT ONE

## FEDERAL TRADEMARK DILUTION (15 U.S.C. § 1125 (c))

29.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 28 of this Complaint as if fully set forth herein.

30.     Plaintiff's Imbible Trademark is a "famous marks" within the meaning of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)(l) and has been a famous mark prior to Defendant's conduct as alleged herein.

31.     Defendants' distribution, sale and/or offer for sale in commerce of books bearing the mark which infringes upon the Imbible Trademark dilutes the distinctive quality of the Imbible Trademark, and was done with the willful intent to trade on Plaintiff's reputation and/or to cause dilution of the Imbible Trademark.

32.     Defendant's unauthorized use of marks which infringe the Imbible Trademark was done with notice and full knowledge that such manufacture, distribution, sale and/or offer for sale was not authorized or licensed by Plaintiff. Plaintiff sent a cease and desist letter to Defendants on

12

April 3, 2019 which is annexed hereto as Exhibit "B", which Defendants ignored. See responsive letter dated May 23, 2019 annexed as Exhibit "C".

33.     Defendants' aforesaid acts are in knowing and willful violation of Plaintiff's rights under section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

34.     Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, will continue to suffer irreparable harm and injury to Plaintiff's goodwill and reputation.

35.     As a result of Defendants' activities, Plaintiff has been damaged in an amount to be ascertained, but no less than $100,000.00.

## COUNT TWO

## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

36.     Plaintiff repeats and realleges Paragraphs 1 through 35 this Complaint as if fully set forth herein.

37.     The Infringing Book is of the same general nature as Plaintiff's productions, as such, Defendants' sale of the Infringing Books is likely to cause confusion to the general purchasing public.

38.   By misappropriating and using marks which infringe upon the Imbible Trademark, Defendants misrepresent and falsely describe to the general public the origin and source of the Infringing Books and to create a likelihood of confusion by ultimate purchasers as to both the source and sponsorship of such books.

39.   Defendant's unlawful and unauthorized and unlicensed distributing, offering for sale and/or selling of the Infringing Books creates express and implied misrepresentations that the Infringing Books were created, authorized or approved by Plaintiff, all to Defendants' profit and Plaintiff's great damage and injury.

40.   Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the mark which infringes upon Plaintiff's Imbible Trademark, in connection with Defendants' books, in interstate commerce constitutes false designation of origin and unfair competition.

41.   Plaintiff has no adequate remedy at law. If Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill and reputation.

42.   By reason of the foregoing, Defendants are liable to LCPLLC for: (a) an amount representing three (3) times LCPLLC's damage or defendants' illicit profits; and (b) reasonable attorney's fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. § 1117.

### COUNT THREE

### FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

43.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44.     The Imbible Trademark and the goodwill of the businesses associated with it in the United States and throughout the world are of great and incalculable value, are highly distinctive and arbitrary, and have become universally associated in the public mind with productions of the very highest quality and reputation finding their source in Plaintiff.

45.     Upon information and belief, without Plaintiff's authorization or consent, and having knowledge of Plaintiff's well-known and prior rights in the Imbible Trademark, and the fact that Defendants' books bear a mark which is confusingly similar to the Imbible Trademark, Defendants have distributed, offered for sale and/or sold the Infringing Books to the consuming public in direct competition with Plaintiff's services and intended sale of books based on Plaintiff's productions, in or affecting interstate commerce.

46.     Defendants' use of marks which infringe upon the Imbible Trademark is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Infringing Books, and is likely to deceive the public into believing the Infringing Books originates from, is associated with or is otherwise authorized by Plaintiff, all to the damage and detriment of Plaintiff's reputation, goodwill and sales.

47.     Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

48.     As a result of Defendants' activities, Plaintiff has been damaged in an amount to be ascertained, but no less than $100,000.00.

49.     As a result of Defendants' activities, Plaintiff has been damaged in an amount to be ascertained, but no less than $100,000.00. By reason of the foregoing, defendants are liable to LLCPLLC for: (a) an amount representing three (3) times LLCPLLC's damage   or   Defendants' illicit  profits; and     (b) reasonable attorney's fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C.  § 1117.

## COUNT FOUR

NEW YORK TRADEMARK DILUTION (New York General Business Law § 360(1))

50.     Plaintiff repeats and realleges Paragraphs I through 49 of this Complaint as if fully set forth herein.

51.     Defendants' acts have caused damage to Plaintiff by tarnishing Plaintiff's valuable reputation and diluting or blurring the distinctiveness of Plaintiff's Imbible Trademark in violation of New York General Business Law § 360(1), and will continue to tarnish and destroy the value of Plaintiff's Imbible Trademark unless enjoined by this Court. Plaintiff has no adequate remedy at law.

## COUNT FIVE

UNLAWFUL DECEPTIVE ACTS AND PRACTICES (New York General Business Law § 349)

52.     Plaintiff repeats and realleges Paragraphs 1 through 51 of this. Complaint as if fully set forth herein. Upon information and belief, Defendants, without Plaintiff's authorization or consent, and having knowledge of Plaintiff's well-known and prior rights in the Imbible Trademark, have advertised, distributed, offered for sale and/or sold the Infringing Books to the consuming public in direct competition with Plaintiff's services.

53.     Defendants' use of the Imbible Trademark is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Infringing Books, and is likely to deceive the public into believing the Infringing Books being sold by Defendants originate from, are associated with, or are otherwise authorized by Plaintiff.

54.     Defendants' deceptive acts and practices involve public sales activities of a recurring nature.

55.     Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

### COUNT SIX

### UNFAIR COMPETITION UNDER NEW YORK STATE LAW

56.     Plaintiff repeats and realleges Paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57.     Plaintiff has built up valuable goodwill in the Imbible Trademark.

58.     Defendants' use of the mark on the book that infringes upon Plaintiff's Imbible Trademark is likely to and does permit Defendant to palm off the Infringing Books as that of Plaintiff, all to the detriment of Plaintiff and the unjust enrichment of Defendants.

59.     Upon information and belief, Defendants, with full knowledge of the fame of the Imbible Trademark, intended to, and did, trade on the goodwill associated with the Imbible Trademark and have misled and will continue to mislead the public into assuming a connection between Plaintiff and Defendants by Defendants' advertising, selling and/or distributing of the Infringing Books.

60.     Defendants' unauthorized use of the mark that infringes upon Plaintiff's Imbible Trademark has caused, and is likely to continue to cause, Plaintiff damage by tarnishing the valuable reputation associated with Plaintiff and its services.

61.     The acts of Defendants, which permit and accomplish confusion, mislead and deceive the public as to the source of the Infringing Books, permit and accomplish palming off of the Infringing Books as those of Plaintiff's and falsely suggests a connection with Plaintiff, constitute acts of unfair competition with Plaintiff in violation of the laws of the State of New York.

62.     Defendant's acts have caused and will continue to cause Plaintiff irreparable harm unless enjoined by this Court. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests the following relief as to each of the above causes of action:

1. That Defendant, its officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through or under them be enjoined and restrained and thereafter, permanently enjoined:

   a. from using in any manner the marks which infringe upon Plaintiff's Imbible Trademark, as to be likely to cause confusion, deception, or mistake on or in connection with the manufacturing, advertising, distributing, offering for sale, or selling of any book not Plaintiff's, or not authorized by Plaintiff to be sold in connection with each of Plaintiff s productions;

   b. from passing off, inducing, or enabling others to sell or pass off any books as and for products produced by Plaintiff, not Plaintiff's, or not produced under the control and supervision of Plaintiff and approved by Plaintiff for sale under the Imbible Trademark;

   c. from committing any acts calculated to cause purchasers to believe that the Infringing books are those sold under the control and supervision of Plaintiff, or sponsored or approved by, or connected with, or guaranteed by, or produced under the control and supervision of Plaintiff;

   d. from further diluting and infringing the Imbible Trademark, and damaging Plaintiff's goodwill;

   e. from otherwise competing unfairly with Plaintiff in any manner;

2. That Defendants be required to forthwith deliver up for destruction their entire inventory of the Infringing books and any advertising or promotional materials bearing the Imbible

Trademark or a confusingly similar copy thereof.

3.      That Defendants cause to be disabled any on-line shopping or retail stores or sites that the Infringing books, including **Amazon.com** and **YouTube** among others.

4.      That Defendants, within thirty (30) days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner in which Defendants have complied with paragraphs 1, 2, and 3 supra.

5.      That Defendants account for and pay over to Plaintiff profits realized by Defendant by reason of Defendant's unlawful acts herein alleged and, that the amount of damages for infringement of Plaintiff's Imbible Trademark be increased by a sum not exceeding three times the amount thereof as provided by law; or in the alternative Plaintiff be awarded Statutory damages under 15 U.S.C. 1114.

6.      A Judgement stating that Defendants' Infringing Products infringe Plaintiff s Imbible Trademark.

7.      That Plaintiff be awarded punitive damages.

8.      That Plaintiff be awarded be awarded costs and disbursements of this action, together with reasonable attorney fees.

9.    That Plaintiff be awarded such other and further relief as the Court may deem equitable, including, but not limited to, any relief set forth under Sections 34-39 of the 1946 Trademark.

Dated:   June 6, 2019
         New York, New York

                                    Respectfully submitted,
                                    LAW OFFICE OF ROBERT L. GREENER


                                    ROBERT L. GREENER ESQ(RG8089)
                                    *Attorney for Plaintiff*
                                    112 Madison Avenue, 6th Floor
                                    New York, NY 10116
                                    (646) 415-8920
                                    (212)689-9680

21

EXHIBIT "A"



*TESS was last updated on Fri Jun 7 05:21:48 EDT 2019*

Logout  Please logout when you are done to release system resources allocated for you.

# IMBIBLE

| | |
|---|---|
| **Word Mark** | IMBIBLE |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Entertainment in the nature of theater productions. FIRST USE: 20140701. FIRST USE IN COMMERCE: 20140801 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 86610151 |
| **Filing Date** | April 26, 2015 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | September 8, 2015 |
| **Registration Number** | 4859696 |
| **Registration Date** | November 24, 2015 |
| **Owner** | (REGISTRANT) Lion's Cathedral Productions, LLC DBA Broadway Theatre Studio LIMITED LIABILITY COMPANY NEW YORK 325 East 64th Street #107 New York NEW YORK 10065 |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

EXHIBIT "B"

# LAW OFFICE OF ROBERT L. GREENER P.C.
## 112 MADISON AVENUE, 6TH FLOOR
### NEW YORK, NEW YORK 10016
(646)415-8920 PHONE
(212)689-9680 FAX
RLG@GREENERLEGAL.COM
WWW.GREENERLEGAL.COM

April 3, 2019

VIA CERTIFIED MAIL.
University of Virginia Press
210 Sprigg Lane
Charlottesville, VA 22903
Att: Susan Moomaw
Chairman of the Board.

Re: Trademark violation for IMBIBLE, Registration Number 4859696, Filing Date April 26, 2015.

Dear Ms. Moomaw,

My office Represents Lion's Cathedral Production LLC, (hereinafter "LCPLLC"). It has come to my client's attention that your company has been using the trademark "Imbible" in association with the marketing or sale of a book published by University of Virginia Press (UVP). The book in question is titled: "The Imbible: a cocktail guide for beginning and home bartenders" by Micah LeMon and Tom McGovern, published October 10, 2017 with the following ISBN numbers: ISBN-10: 0813940389, ISBN-13: 978-0813940380. Please be advised that IMBIBLE, is a registered Trademark, U.S. Reg. No. 4859696 of LCPLLC. A copy of the registration is attached hereto as Exhibit 1.

Federal registration of this trademark provides LCPLLC with certain proprietary rights. LCPLLC is entitled to restrict the use of the trademark, or a confusingly similar trademark, in association with confusing similar products or services. The Trademark serves as an important and distinctive representation of the services of LCPLLC, which produces several well-known off-Broadway plays containing the Imbible mark, and which are associated with the consumption of Alcohol.

The first play is titled "The Imbible: A Spirited History of Drinking" and the second is "The Imbible: Day Drinking", followed by "The Imbible: Christmas Carol Cocktails", and "The Imbible: Rum and Pirates." All four plays have received substantial press and very favorable reviews of the production from such publications as the Huffington Post, Time Out New York and Business Insider. The shows have received a certificate of excellence from Trip Advisor for two years in a row and earned 4 stars in Yelp. More

can be seen on the website for Imbible at www.imbible.nyc. Thousands of people have attended the performances of the shows since their inception and are aware of my clients uses of its Mark. In addition, my client spends thousands of dollars a year on marketing and promotion of its shows, both in print media and on-line which reach people in the United States and internationally.

The mark also reflects the substantial goodwill of the production company, which it has obtained through countless performances in addition to the favorable reviews. As a result, the public has come to associate the word Imbible with my client's productions. Therefore, my client is sending you this Cease and Desist letter to protect LCPLLC and its "Imbible" trademark, against misrepresentation that may cause substantial harm to LCPLLC's business by facilitating the loss of the trademark's effectiveness.

Currently you are using the name "Imbible" in commerce associated with the book your company is currently offering for sale through various outlets in interstate commerce including sites like Amazon.com. Attached hereto as Exhibit 2 is a copy of the receipt from a recent purchase of the book in New York. Your use of the name "The Imbible" is confusingly and/or deceptively similar to LCPLLC's trademark and also constitutes an exact reproduction or imitation thereof. As both my client's productions and your book involve the consumption of Alcohol, consumers will be confused as the source of goods and would reasonably assume that your book originates with or is endorsed by my client. Attached as Exhibit 3 are examples of your use of LCPLLC trademark in commerce.

Your unauthorized use of the federally registered trademark amounts to an infringement of LCPLLC trademark rights, and therefore we respectfully request that you immediately cease and desist in any further use of "The Imbible" name in any form or association with the marketing, sale, distribution, or identification of your product or services. In the circumstances, we demand that you immediately:

(1) Discontinue all use of the Imbible trademark or any other mark containing our client's protected marks as part your use in the publishing, sale or promotion of the book "The Imibible"; and provide an accounting of your remaining inventory of books.

(2). Discontinue selling any services or merchandise using any part of "Imbible" for any purpose.

(3) Take down any website using the name Imbible or rename them without any references to the Imbible mark from your website or any other websites that you may have control over.

2

(4) immediately discontinue press releases, advertising, or promotion and marketing using the marks or any part of them identified in paragraphs (1) and (2) above; and

(5) identify any partners, sponsors and licensee's that you have allowed to use the marks identified in paragraphs (1) and (2) above for the year 2017 and up to date; and

(6) contact any third partner retailers or distributors and inform them to cease selling the book and to return any unsold books, or and destroy them immediately.

Please provide written confirmation, within Ten (10) Days from the date of this letter, that our demands have been met, Therefore, time is of the essence. This letter is without prejudice to any of my client's rights, and I on behalf of my client reserve the right to any and all remedies that my client may have under the law.

I look forward to hearing from you.

Very Truly Yours,

Robert L. Greener

3

EXHIBIT "C"



OFFICE OF THE
UNIVERSITY COUNSEL

ROBERT M. TYLER
ASSOCIATE UNIVERSITY COUNSEL
Direct: 434.297.7624
Email: robtyler@virginia.edu

May 23, 2019

BY EMAIL (rlg@greenerlegal.com)

Robert L. Greener
Law Office of Robert L. Greener P.C.
112 Madison Avenue, 6th Floor
New York, New York 10016

     Re:    IMBIBLE; University of Virginia Press

Dear Mr. Greener:

    I do apologize for my delay in responding substantively to your April 3 letter concerning UVA Press' publication of Micah LeMon's book *The Imbible: A Cocktail Guide for Beginning and Home Bartenders*. I have had an opportunity to discuss the matter this book and your client's *The Imbible* off-Broadway shows with UVA Press and Mr. LeMon.

    With all due respect to your client and its rights, the uses of these designations are not likely to confuse consumers. Your client has registered IMBIBLE in connection with theater productions and uses that mark in connection with those and other related services. Yes, those shows involve a history of cocktails, and your website promoting those shows includes some cocktail recipes, but that doesn't give your client unfettered and exclusive rights to control every use of the term.

    Mr. LeMon's book is a guide for bartenders, a mix of theory and application. The title is a nod to his life story, having gone from a conservative, tee-total, Pentecostal Christian family yet become a celebrated bartender. Nothing in the book suggests endorsement or affiliation by your client. Moreover, the circumstances here suggest little likelihood that consumers will encounter both marks at all, let alone that they are likely to be confused. UVA Press published a single print run of 3,000 hardcover copies, selling some 2,000 copies with approximately 750 in stock. In addition, approximately 20 copies of an e-book version sold. We have no plans to commence another print run. Given Mr. LeMon's popularity as a bartender in Charlottesville, sales have been regional and with no national sales to speak of (save for your purchase).

    As the owner of a large portfolio of valuable intellectual property, UVA respects the rights of others, and we have no wish to harm any interest held by your client. We simply disagree that the actions of UVA Press are likely to injure your client. We are aware of actual confusion in a year and a half of co-existence, and I'm confident that if any was known to you, you would have mentioned

Madison Hall | 1827 University Avenue | PO Box 400225 | Charlottesville, VA 22904-0225
P 434.924.3586 | F 434.982.3070 | www.virginia.edu

Robert L. Greener
May 23, 2019
Page 2 of 2

it. We're happy to agree not to use IMBIBLE in connection with other publications, but we see no reason to discontinue using the term in connection with this book, nor to discontinue sales.

Please let me know if you would like to discuss.

Sincerely,

Robert M. Tyler

Robert L. Greener, Esq.
LAW OFFICE OF ROBERT L. GREENER
112 Madison Avenue, 6th Floor,
New York, NY 10116
(646)415-8920 Phone
(212) 689-9680

(RG8089)


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LION'S CATHEDRAL PRODUCTION LLC

                                    Plaintiff          Civil Action No.

          v.

MICAH LEMON and TOM MCGOVERN, individually,
UNIVERSITY OF VIRGINIA PRESS and DOES Nos.
1 - 10

                              Defendants.